RICHARD AND DEBRA L. MORRIS, APPELLANTS,
v. MISTY CORZATT, APPELLEE.
583 N.W.2d 26

Filed August 7, 1998.   No. S-97-952.

Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, for appellants.

Terri S. Harder, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

Appellants, Richard and Debra L. Morris, are the parents of appellee, Misty Corzatt, and the maternal grandparents of the two minor children at issue, Christopher Corzatt and Calea Corzatt. Appellants obtained court-ordered visitation of Christopher in Finney County, Kansas, in May 1993. The order granting such visitation was registered in Buffalo County, Nebraska, on March 7, 1997. Appellee filed a motion to transfer all pending matters regarding visitation of Christopher from Finney County to Nebraska as a more convenient forum, and the Finney County District Court ordered this transfer in November 1996. In the present action, appellants sought grandparent visitation of Calea pursuant to Neb. Rev. Stat. § 43-1801 et seq. (Reissue 1993). Appellee filed a cross-petition for modification of the visitation order regarding Christopher. The district court for Buffalo County, Nebraska, denied appellants'

request for court-ordered visitation with Calea and vacated the Kansas order providing visitation with Christopher. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We affirm.

## BACKGROUND

In April 1992, when Christopher was approximately 10 months old, appellants filed a petition for grandparent visitation in Finney County, Kansas. Over the objections of appellee, appellants were granted visitation of one weekend per month, a 10-day summer visit, and a family Thanksgiving visit. To facilitate visitation, the parties would meet at a central point, owing to the 4-hour travel distance between the parties' homes. Both children visited with appellants, despite the fact that the Kansas order applied only to Christopher. In January 1995, the father of the two children, Frank Corzatt, was killed in an automobile accident. Following Frank's death, appellee and her two children moved to and from several locations in Kansas until settling in Pleasanton, Nebraska, in May 1996. Following appellee's move to Pleasanton, appellants initiated an action in the district court, seeking to register the Kansas visitation order in Nebraska. Appellants later filed the present action to obtain an order for visitation as to Calea, and appellee filed a cross-petition seeking a modification of the visitation order relating to Christopher.

Appellants testified that their relationship with appellee was strained. Appellants felt that their relationship with their grandchildren was beneficial and significant and feared that without a court order, visitation would cease. Diana Bonnell, a family mediator for the 25th Judicial District in Kansas, did a grandparent home study and testified on appellants' behalf. Bonnell testified that appellants provided a relaxed atmosphere for the children and saw no evidence of a strained relationship between the children and appellants. Bonnell admitted upon examination by the court that there was some element of a "Disneyland Daddy" in the appellants' positive relationship with the children. Bonnell testified that the relationship with appellants could possibly be used to undermine appellee's authority. Six

other friends of appellants' testified by affidavit about appellants' relationship with the children.

Appellee testified she felt that her mother undermined her authority with the children and that she always had to be the bad guy when it came to discipline because appellants are so much more lax in disciplining the children than she is. Appellee testified that appellants never inquired as to her rules and that Debra Morris had often made comments to the children about how much better things were at appellants' house than at appellee's. Appellee testified about an incident where Debra Morris took Christopher to the eye doctor without notifying appellee.

Testifying on appellee's behalf was Alana Anderson, the Buffalo County child custody officer, who had met with the parties on three occasions. In oral argument, it was explained that the Buffalo County child custody officer acted much the same as a guardian ad litem for the children. It was Anderson's observation that the parties' relationships with the children seemed to be a competition, with each party trying to one-up the other for the children's affection. Anderson felt this undermined appellee's authority with the children. Anderson recommended that court-ordered visitation be terminated.

Lori Wilkens is a friend of appellee's who, at appellee's request, began monitoring appellants' telephone conversations with the children. During several of the conversations, Debra Morris criticized things appellee had done by comparing them to what appellants could provide the children.

Five more witnesses testified on appellee's behalf via affidavit. Dustin Morris, appellee's brother, testified that he lived at the Morris household during visitation. He testified that none of the many gifts appellants bought the children ever went home with the children following visitation. Dustin further testified that on one occasion, he overheard Debra Morris teaching Christopher her telephone number so that Christopher could come live with her when he was older.

Shirley K. Calvin was the Kansas court-appointed guardian ad litem, appointed when appellants attempted to modify the original order in Kansas. Calvin testified that she talked to appellants about appellee, and Debra Morris took every opportunity to tell her every bad thing about appellee. Appellants

used the word "evil" on several occasions to describe appellee and stated that "[t]he children would be better off with us, we could raise them better." Calvin recommended that visitation be denied as to Calea and that the previous visitation order regarding Christopher be vacated.

Keith Corzatt, the children's paternal grandfather, testified by affidavit that the children were very unruly following their visits with appellants. On one occasion, he heard Christopher remark, in response to being asked to do something he did not wish to do, "I'll just call Grandma Debbie and she'll come after me." Christopher also confided in Keith that Debra Morris had called appellee a witch. Keith further testified that appellee had never denied him and his wife visitation with the children upon their request.

Sharlene Barlovic, a counselor who met with Christopher on twelve occasions, testified by affidavit that she felt there would be no ill effects to discontinuing visitation. It was Barlovic's expert opinion that Christopher suffered from adjustment disorder caused by the strained relationship between appellee and appellants and that court-ordered visitation would not alleviate the problem.

Appellants filed written objections to the introduction of portions of the testimony of Dustin, Keith, and Emily Teel, the children's aunt on their father's side, on hearsay and foundation grounds. Appellants further filed written objections to any of the testimony of Barlovic and Calvin on the ground that they were being called as experts and § 43-1802 did not specifically provide for expert testimony to be given by affidavit.

In addition to the affidavits, the court admitted into evidence certain documents from the Finney County court file. Among the documents specifically objected to were (1) the report of Calvin, the guardian ad litem in the Kansas case; (2) a letter from CASA, Inc., to the Kansas county court; (3) a letter from Pawnee Mental Health Services, which had performed a psychological evaluation on each of the parties involved during the 1992 action; and (4) a letter from appellee's attorney, Mickey Moorman, in the Kansas action, which also contained the CASA letter. (CASA appears to be an organization of volunteers who, pursuant to court appointment, make recommenda-

tions to the court concerning custody and visitation.) Appellants objected to the introduction of the documents at trial on hearsay grounds and were overruled.

The district court ruled that appellants had a significant prior relationship which was, *in part*, beneficial to the children. The trial court further found that the problem between appellee and appellants is irreconcilable; that the competition during the last 3½ to 4 years of grandparent visitation of both children is unhealthy for the children and adversely affects the parent-child relationship; and that appellants' actions have undermined the relationship between the mother and the children and do not serve the best interests of the children at this time. The trial court ruled that the grandparent visitation between appellants and Calea should be denied, and further ruled that the prior order granting grandparent visitation between appellants and Christopher is no longer in Christopher's best interests and serves to undermine his relationship with the appellee, and therefore, the prior order awarding grandparent visitation to appellants should be vacated.

## ASSIGNMENTS OF ERROR

Appellants assign as error that the district court (1) abused its discretion in vacating the prior visitation order relating to Christopher, (2) abused its discretion in failing to grant visitation with Calea, and (3) erred in admitting into evidence the affidavits of Barlovic and Calvin and the Finney County District Court records.

## STANDARD OF REVIEW

Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Eberspacher v. Hulme*, 248 Neb. 202, 533 N.W.2d 103 (1995).

## ANALYSIS

Because our review is for an abuse of discretion under a de novo on the record standard, and because the statute in question uses subjective terms such as "significant beneficial relation-

ship" and "adversely interfere with the parent-child relationship," see § 43-1802(2), our decision in this case will necessarily be very fact specific. See *Rosse v. Rosse*, 244 Neb. 967, 510 N.W.2d 73 (1994). *Rosse* was a case of first impression where this court first dealt with the grandparent visitation statute. In *Rosse*, the facts established that the grandparents who sought visitation had a significant beneficial relationship with the children and that any accusations that the grandparents might interfere with the mother's relationship with her children were generalized. Important to note is this court's finding that "[a]lthough it is clear from the record that the relationship between [the mother] and [the grandparents] is strained, there is no evidence that either [grandparent] interferes in the relationship between [the mother] and [the minor child]." *Id.* at 974, 510 N.W.2d at 79-80. Because of the evidence in *Rosse*, we found no abuse of discretion in the trial court's decision that clear and convincing evidence supported the granting of visitation. However, the grandparent-mother relationship in *Rosse* was not nearly as acrimonious as the relationship between appellants and appellee in the present case.

In the present case, there is substantial evidence in the record that the acrimonious relationship between appellee and appellants is detrimental to the children. Also important is the damaging effect these problems have on appellee's ability to raise her children. There was testimony that there are often arguments in front of the children when exchanges are made for visitation. Furthermore, there was ample evidence that Debra Morris' relationship to the children interfered with rules which appellee had established in her own household. Finally, there was testimony from appellee that if appellants' petition was denied, she would still allow them visitation with Christopher and Calea. Corroborative of this testimony is the fact that appellee allowed appellants visitation with Calea for nearly 3 years despite the lack of a visitation order referring to her. During argument, appellee's counsel stated that appellee would allow visitation with appellants, but she did not want to be under a court order to do so.

The criteria set forth in § 43-1802(2) control as to the granting of grandparent visitation with Calea. The trial court found

that the first criterion, a significant prior relationship between Calea and appellants, had been established. As to the second criterion, the trial court found that appellants' efforts to undermine the relationship between appellee and the children do not serve the best interests of the children at this time. As to the third criterion, that the grandparent visitation will not adversely interfere with the parent-child relationship, the trial court found that the competition between appellants and appellee over the last 3½ to 4 years adversely affected the parent-child relationship. The trial court, therefore, found that appellants had failed to prove two of the three statutory criteria necessary to grant appellants grandparent visitation with Calea. Under our standard of review, the determinations of the trial court are to be affirmed in the absence of an abuse of the trial judge's discretion. We find no abuse of discretion in this case and therefore affirm.

With regard to Christopher, appellants already had grandparent visitation based upon the order of the district court for Finney County, Kansas. In her cross-petition, appellee sought modification of this order. The statutory criteria for modification of a prior grandparent visitation order are different from the criteria for obtaining grandparent visitation in the first instance and are set out in § 43-1802(3): "The court may modify an order granting or denying [grandparent] visitation upon a showing that there has been a material change in circumstances which justifies such modification and that the modification would serve the best interests of the child." The trial court found as to both Christopher and Calea that appellants' efforts to undermine the relationships between appellee and her children do not serve the best interests of the children at this time. Under our standard of review, the determinations of the trial court are to be affirmed in the absence of an abuse of discretion. We find no abuse of discretion and therefore affirm the trial court's ruling which vacated the prior order granting grandparent visitation of Christopher.

Appellants also assign as error the admission of the affidavits of Barlovic and Calvin and the Kansas court file into evidence over objection on the ground that the affidavits amounted to an attempt by appellee to enter expert testimony via affidavit, thus

preventing appellants from cross-examination. Appellants further argue that the affidavit testimonies of Barlovic and Calvin were expert testimonies and did not afford them an opportunity to cross-examine. Appellants conclude that the grandparent-grandchild relationship deserves constitutional due process protection. If afforded such protection, appellants' right to cross-examine adverse witnesses would be denied by the admission of expert testimony by affidavit.

Appellee counters by arguing that a constitutional challenge to the grandparent visitation statutes was not properly raised by appellants, as they did not conform to Neb. Ct. R. of Prac. 9E (rev. 1996). See, also, Neb. Rev. Stat. § 25-21,159 (Reissue 1995). However, appellants have not questioned the constitutionality of the grandparent visitation statutes, but, rather, merely question the constitutionality of the result in this case. As such, compliance with rule 9E is not mandated.

As noted above, the standard of review in this action is de novo on the record. *Eberspacher v. Hulme*, 248 Neb. 202, 533 N.W.2d 103 (1995). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997). There is nothing in the district court order which was taken exclusively from the affidavits or the court file of Finney County about which appellants complain. As stated in the case *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992), the improper admission of evidence in a parental rights termination case does not, in and of itself, amount to reversible error; as long as proper objection was raised at trial, the Supreme Court will not consider improperly admitted evidence in its de novo review of the record. See, also, *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985). In our de novo review in this case, we find that the evidence sustains the trial court's decision without consideration of the affidavits or the Finney County District Court's file, which appellants claim was improperly admitted.

Appellants' third assignment of error is therefore without merit.

AFFIRMED.