ROBERT PIER AND DONA JO PIER, APPELLEES, V.
STEPHANIE A. BOLLES, APPELLANT, AND BRETT E. PIER, APPELLEE.
596 N.W. 2d 1

Filed June 11, 1999. No. S-98-900.

Gregory C. Damman and Joseph H. Murray, of Germer, Murray & Johnson, for appellant.

Mary Morgan Cote for appellees Robert Pier and Dona Jo Pier.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
### NATURE OF CASE
Stephanie A. Bolles, formerly Stephanie A. Pier, the natural mother of a minor child named "Dennie LeRoy Pier" at birth, appeals from the order of the district court for Hall County denying her petition for modification, in which Stephanie sought to terminate the grandparent visitation of Robert Pier and

Dona Jo Pier, husband and wife, the paternal grandparents of Dennie. We affirm in part and reverse in part the order of the district court, and remand the cause for proceedings consistent with this opinion.

## STATEMENT OF FACTS

Stephanie and Brett E. Pier were married on May 4, 1990. The couple had one child during their marriage Dennie, who was born on March 11, 1991. On December 14, 1992, Stephanie and Brett divorced. Pursuant to the district court's decree of dissolution of marriage, custody of Dennie was granted to Stephanie. The decree also granted grandparent visitation to Brett's parents, Robert and Dona Jo. The decree provided, however, that Stephanie could unilaterally terminate any and all visitation with the grandparents if Brett violated his criminal probation order or was charged with a criminal offense within 2 years after the entry of the decree. In September 1994, the grandparents' visitation was terminated, evidently due to the occurrence of one of these events.

On October 20, 1994, Robert and Dona Jo initiated a new action in the district court, seeking grandparent visitation with Dennie. This appeal arises from this separate action. The grandparents were evidently granted temporary visitation in the course of the new action. On May 26, 1995, the district court awarded the grandparents visitation with Dennie. It is this visitation order which was the subject of Stephanie's petition to modify, the denial of which is before this court.

In August 1993, Stephanie married Martin Bolles, who became Dennie's stepfather. On October 20, 1995, Brett voluntarily relinquished his parental rights to the child and consented to Dennie's adoption by Martin. In accordance with state law, on February 2, 1996, the district court, having jurisdiction over Stephanie and Brett's divorce, entered an order consenting to the county court's adoption proceedings. Thereafter, on April 11, Martin adopted Dennie.

On June 6, 1997, Stephanie moved to modify the May 1995 grandparent visitation order, seeking to terminate Robert and Dona Jo's visitation with Dennie due to Brett's relinquishment of his parental rights and the adoption of Dennie by Martin. Modification of an existing grandparent visitation order is per-

mitted under the grandparent visitation statutes, Neb. Rev. Stat. §§ 43-1801 through 43-1803 (Reissue 1998), upon a showing that there has been a material change in circumstances and that modification would serve the best interests of the child. See § 43-1802(3).

The trial court conducted a hearing on July 31, 1998. The evidence consisted of the following: Stephanie and Brett's divorce decree; the May 26, 1995, order granting Robert and Dona Jo visitation with Dennie; Brett's relinquishment of parental rights and consent to adoption; the district court's order consenting to the adoption; the adoption decree; Dennie's birth certificate reissued after his adoption by Martin showing Dennie's name as "Dennie LeRoy Bolles"; a one-page, two-paragraph affidavit from Dona Jo stating that she has "had a close, loving relationship with him [Dennie]" and has exercised regular visitation with him; and the parties' trial stipulation, agreeing to the submission of Stephanie's petition on the basis of the above evidence. Stephanie specifically stipulated that she "offer[s] no evidence on the issue of whether or not the requested modification and termination of grandparent visitation rights is in the best interests of" Dennie.

In a written order entered August 10, 1998, the district court denied Stephanie's petition for modification. The order provided that "the prior order of this Court granting grandparent visitation . . . is not automatically terminated because of the adoption of the minor child by the step-father" and it is "in the best interests of the minor child to maintain [Robert and Dona Jo's] grandparent visitation rights." This appeal followed.

## ASSIGNMENT OF ERROR

On appeal, Stephanie has assigned one error in which she claims that based upon Brett's relinquishment of his parental rights and the subsequent adoption of Dennie by Martin, the trial court erred in denying her motion to modify Robert and Dona Jo's grandparent visitation.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion, irrespective of the decision

made by the court below. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999); *State ex rel. Wood v. Fisher Foods*, 254 Neb. 982, 581 N.W.2d 409 (1998). Factual determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Morris v. Corzatt*, 255 Neb. 182, 583 N.W.2d 26 (1998).

## ANALYSIS

■ The instant appeal presents the issue of whether under Nebraska law paternal grandparent visitation with a child, granted following a divorce proceeding, is automatically terminated by the father's voluntary relinquishment of parental rights and the subsequent adoption of the child by the stepfather. In Nebraska, grandparent visitation is a creature of statute. See *In re Interest of Ditter*, 212 Neb. 855, 326 N.W.2d 675 (1982). See, also, *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998). At common law in Nebraska and elsewhere, "grandparents lacked any legal right to visitation and communication with their grandchildren if such visitation was forbidden by the parents. . . . Indeed, the parents' obligation to allow such visitation was a moral, not a legal obligation." *Ex Parte Bronstein*, 434 So. 2d 780, 782 (Ala. 1983). Recognizing the important role that grandparents can play in a child's life, every state adopted a statutory scheme permitting grandparent visitation under varying circumstances. 3 Family Law and Practice § 32.09[7][b][ii] (Arnold H. Rutkin ed., 1999). The circumstances under which grandparents can seek and retain visitation differ widely from state to state. *Id.*

Nebraska was the last state in the nation to grant grandparent visitation. Judiciary Committee Hearing, L.B. 105, 89th Leg., 1st Sess. 91 (Mar. 25, 1985). In 1986, the grandparent visitation statutes, 1986 Neb. Laws, L.B. 105, were enacted by the Nebraska Legislature, setting forth the grandparents' statutory visitation. Under the grandparent visitation statutes, a grandparent may seek visitation under the following circumstances:

A grandparent may seek visitation with his or her minor grandchild if:

(a) The child's parent or parents are deceased;

(b) The marriage of the child's parents has been dissolved or petition for the dissolution of such marriage has been filed, is still pending, but no decree has been entered; or

(c) The parents of the minor child have never been married but paternity has been legally established.

§ 43-1802(1). Robert and Dona Jo's grandparent visitation order at issue in this case was entered pursuant to § 43-1802(1)(b) after the divorce of Stephanie and Brett.

In order for a trial court to grant visitation in the first instance, evidence must be adduced to enable the court to find "by clear and convincing evidence that there is, or has been, a significant beneficial relationship between the grandparent and the child, that it is in the best interests of the child that such relationship continue, and that such visitation will not adversely interfere with the parent-child relationship." § 43-1802(2). Once an order has been entered granting or denying grandparent visitation, § 43-1802(3) provides that the visitation order may be modified by the court "upon a showing that there has been a material change in circumstances which justifies such modification and that the modification would serve the best interests of the child." As noted above, the proceedings herein were conducted pursuant to § 43-1802(3).

Stephanie argues that Brett's voluntary relinquishment of his parental rights and consent to Dennie's adoption by Martin terminates, by operation of law, Robert and Dona Jo's grandparent visitation previously granted by court order. Stephanie relies on the adoption statutes in support of her argument. Robert and Dona Jo argue that their grandparent visitation survived Dennie's adoption and that the controlling statute in this case is the modification provision found at § 43-1802(3). We agree with Robert and Dona Jo.

Stephanie claims that the effect-of-adoption statutes automatically extinguish the visitation of the grandparents when the child is adopted. She relies on Neb. Rev. Stat. §§ 43-110 and 43-111 (Reissue 1998). According to § 43-110,

After a decree of adoption is entered, the usual relation of parent and child and all the rights, duties and other legal

consequences of the natural relation of child and parent shall thereafter exist between such adopted child and the person or persons adopting such child and his, her or their kindred.

Pursuant to § 43-111, after an adoption occurs, "the natural parents of the adopted child shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such adopted child or to his or her property by descent and distribution."

At issue in this case is the status of the natural grandparents' visitation following the child's adoption by the stepparent. Section 43-110 speaks to the rights of the adoptive family and states, inter alia, that the adoptive parent and "his, her or their kindred" shall enjoy the consequences of the natural relation of such family members upon adoption. Section 43-111 speaks to the status of the natural parents following the adoption of the child and states, inter alia, that the "natural parents of the adopted child shall be relieved of all parental duties." In contrast to § 43-110, nowhere in § 43-111 is there any reference to the "kindred" of the natural parent as being affected by or relieved of duties of their natural relationship to the child. Thus, the explicit effect of §§ 43-110 and 43-111 is to provide that the adoptive parent and his or her kindred enjoy a new relationship to the child but that only the natural parents of the adoptive child are relieved of their duties to the child. The substance of § 43-111 was last amended in 1985. When the grandparent visitation statutes, which include a provision for visitation modification, became effective in 1986, the effect of adoption upon the natural parent and absence of explicit effect on the natural parent's "kindred" under § 43-111 were in place, and it is assumed that the Legislature was aware of and acquiesced in the law as it existed when it passed the new legislation pertaining to the same or a related subject matter. See *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994). Thus, although § 43-111 relieves the natural parents of their parental duties, unlike § 43-110, it does not provide for a stated effect of adoption on the natural grandparents. Such effect is to be found in the grandparent visitation statutes. As we have previously observed, "the visitation act and the adoption statutes do not relate to the same subject.

The former defines grandparents and their rights; the latter define parents and their rights." *Rust v. Buckler*, 247 Neb. 852, 854, 530 N.W.2d 630, 632 (1995).

Grandparent visitation in Nebraska was created by statute, and we must look to those statutes to determine the visitation rights of natural grandparents following an adoption of the child. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Father Flanagan's Boys Home v. Dept. of Soc. Servs.*, 255 Neb. 303, 583 N.W.2d 774 (1998).

█ In this case, Robert and Dona Jo sought and obtained their visitation in an independent action filed in 1994. Their standing was predicated upon their satisfying the statutory definition of "grandparent," a definition they met at the time they filed the 1994 action. Specifically, they were the biological parents of Brett, who was the biological parent of Dennie. See § 43-1801. Subsequent to the entry of the 1995 visitation order, however, Brett voluntarily relinquished his parental rights to Dennie, and the child was adopted by Martin. There is no question that under the grandparent visitation statutes, if Brett had terminated his parental rights and Dennie had been adopted by his stepfather prior to Robert and Dona Jo's seeking grandparent visitation, Robert and Dona Jo would have had no standing under the statutes to seek such visitation. Pursuant to the grandparent visitation statutes, a grandparent's ability to seek visitation in the first instance is premised upon the relationship between the grandchild and his or her parent. Once the parental relationship is terminated, the statutory basis on which a grandparent can seek visitation is likewise extinguished. *Rust v. Buckler*, 247 Neb. at 855, 530 N.W.2d at 632 (applying "plain, ordinary, and popular" reading to adoption statute, maternal grandparents who adopted child became child's "parents," who were not deceased, divorced, or in process of seeking divorce, thus precluding visitation by paternal grandparents under grandparent visitation statutes because no condition existed under which they could seek visitation). '

█ Grandparent visitation is statutorily derived. Unlike the provisions relative to grandparents seeking visitation in the first

instance, nothing contained within the modification provisions of the grandparent visitation statutes makes the modification of previously ordered grandparent visitation dependent upon the parent's continued parental relationship with the child. Indeed, construing the adoption statutes and the grandparent visitation statutes in pari materia, we determine that by the grandparent visitation statutes' express provision of a method by which to modify previously ordered grandparent visitation, the Legislature intended that grandparent visitation granted under these statutes not be interrupted by the adoption statutes. Instead, the grandparent visitation statutes provide a two-step analysis by which the court, upon application, can determine on a case-by-case basis whether an order previously granting or denying grandparent visitation should be modified. Thus, following the adoption of the child, if the evidence shows that there has been a material change in circumstances justifying a change and the best interests of the child would be served, previously granted grandparent visitation can be modified, up to and including termination of grandparent visitation.

In construing the modification provision of the grandparent visitation statutes, this court has recently affirmed a trial court's order, inter alia, terminating previously granted grandparent visitation, upon a finding by the trial court based on evidence that such termination comports with the statutory provisions. In *Morris v. Corzatt*, 255 Neb. 182, 583 N.W.2d 26 (1998), the grandparents had been granted visitation under Kansas law with one of two grandchildren. When the grandchildren and their mother moved to Nebraska, the grandparents registered their Kansas order in Nebraska. Thereafter, the grandparents sought visitation with the second grandchild under the Nebraska grandparent visitation statutes, and the mother cross-petitioned to modify visitation as to the first child also under the same statutory provisions. The trial court denied the grandparents' petition seeking visitation with the second grandchild and granted the mother's petition to modify, vacating the Kansas grandparent visitation order as to the first grandchild.

On appeal, we affirmed the decisions of the trial court. In so ruling, we recognized that the "statutory criteria for modification of a prior grandparent visitation order are different than the

criteria for obtaining grandparent visitation in the first instance and are set out in § 43-1802(3)." *Morris v. Corzatt,* 255 Neb. at 188, 583 N.W.2d at 30. We then reviewed the evidence in the case, which consisted of abundant live testimony from the grandparents, the mother, a Kansas family mediator, a friend of the mother who was a witness to telephone conversations between the mother and the grandmother, and a Nebraska child custody officer, acting in a capacity similar to a guardian ad litem. Five other witnesses testified by affidavit, providing substantive factual information regarding the relationships between the parties and the children. Based upon this detailed record, we found no abuse of discretion in the trial court's determination that the grandparents were attempting to undermine the relationship between the mother and the children and that such activities were not in the best interests of the children. We affirmed the trial court's order vacating the grandparent visitation order as to the first grandchild pursuant to § 43-1802(3) and the denial of grandparent visitation as to the second grandchild pursuant to § 43-1802(2)

The Legislature provided a specific provision under § 43-1802(3) by which an order pertaining to grandparent visitation granted under the grandparent visitation statutes can be modified upon the occurrence of changed circumstances justifying modification and where modification would serve the best interests of the child. Stephanie moved under § 43-1802(3) to modify visitation. At the trial on the petition to modify, the parties in the instant case specifically stipulated that Stephanie offered no evidence on whether modifying the grandparent visitation order was in Dennie's best interests. We further note that the only evidence offered by Robert and Dona Jo is a single sentence contained in Dona Jo's affidavit stating in a conclusory manner that she has had "a close, loving relationship with [Dennie] since his birth" and that Robert and Dona Jo have exercised regular visitation with the child since grandparent visitation was granted.

The trial court determined in its August 13, 1998, written order that "the prior order of this Court granting grandparent visitation . . . is not automatically terminated because of the adoption of the minor child by the step-father." We agree with

this written legal conclusion and as a matter of law affirm that portion of the trial court's order. The trial court continued, however, that it was "in the best interests of the minor child to maintain [Robert and Dona Jo's] grandparent visitation rights." Given the scant record of evidence regarding the child's best interests, we find this determination to be an abuse of discretion and reverse this portion of the trial court's order.

## CONCLUSION

Under our obligation to review questions of law independent of the trial court's decision, we hold that the trial court in this case correctly concluded that the grandparent visitation previously granted was not automatically terminated by Brett's voluntary relinquishment of parental rights and Dennie's subsequent adoption by his stepfather. Accordingly, we affirm that portion of the trial court's order. Under our de novo standard of review of the trial court's factual finding concerning continued visitation in this case, we hold that given the lack of evidence on the issue of the child's best interests, the trial court abused its discretion in finding that continued grandparent visitation was in the best interests of Dennie.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.