KATHERINE M. RANEY, APPELLANT AND CROSS-APPELLEE, V.
JOEY L. BLECHA, APPELLEE AND CROSS-APPELLANT.

605 N.W.2d 449

Filed February 4, 2000.   No. S-98-920.

Charles J. Bentjen, of Witte and Bentjen, P.C., for appellant.

John F. Thomas, Leo A. Knowles, and Amy E. Wallace, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

Wright, J.

## NATURE OF CASE

Katherine M. Raney appeals the decision of the district court which terminated her temporary visitation with Shelby Leigh Blecha.

## SCOPE OF REVIEW

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999).

■ In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999).

## FACTS

Shelby was born to Katherine's daughter Leigh Ann Jarrett and Joey L. Blecha in 1992. Leigh Ann and Joey never married, but Joey has executed a written acknowledgment of paternity. Joey lived with Shelby and Leigh Ann for approximately 2 months during Shelby's first year. Thereafter, Joey moved out, and Shelby lived with Leigh Ann and Katherine until Leigh Ann's death in 1997.

Following Leigh Ann's death, Katherine attempted to be named personal representative of the estate, but she was unsuccessful. In addition, she applied for a writ of habeas corpus to obtain custody of Shelby, but the petition was voluntarily dismissed. Katherine then filed suit as Shelby's next friend, seeking to have paternity established, custody of Shelby awarded to her, and an order of support and visitation entered against Joey. See *Blecha v. Blecha*, 257 Neb. 543, 599 N.W.2d 829 (1999). Katherine's claim for custody was based on allegations that Shelby and Leigh Ann had lived with either Katherine or Shelby's aunt for nearly all of Shelby's life and that Katherine was a fit and proper legal custodian of Shelby. *Id.*

On February 12, 1998, Katherine and Joey stipulated to a temporary visitation schedule which was subsequently approved by the district court. The schedule included visitation on alter-

nating Sundays from 9 a.m. until 7 p.m. On February 18, Joey filed a motion to terminate the visitation. Joey claimed that Katherine had used the visitation to interfere with the natural father-son relationship by taking Shelby to be interviewed by an attorney for purposes of Katherine's seeking custody. The district court overruled this motion, and no further action was taken on this matter.

On July 28, 1998, a decree of adoption was entered by the Sarpy County Court in which Joey's wife, Jessica Blecha, adopted Shelby. The following day, Joey filed in the district court for Douglas County a second motion to terminate visitation for the reason that Shelby had been adopted by Jessica. In his motion, Joey alleged that Katherine was no longer Shelby's grandmother and therefore did not have a right to visitation.

On August 7, 1998, the district court terminated the visitation, finding that although Katherine had filed a petition seeking grandparent visitation, Shelby had subsequently been adopted by Jessica. Relying on Neb. Rev. Stat. § 43-111 (Reissue 1998), the district court concluded that the adoption of Shelby by Jessica terminated the rights of Leigh Ann and that, therefore, Katherine no longer met the definition of a grandparent set forth in the grandparent visitation statutes. On this basis, the district court sustained Joey's motion to terminate visitation. Katherine appeals from this order.

## ASSIGNMENTS OF ERROR

Katherine asserts the district court erred (1) in finding that the adoption of a child by a stepparent terminates the parental rights of the deceased parent, (2) in finding that Katherine no longer fits the definition of a grandparent under the grandparent visitation statutes, and (3) in sustaining the motion to terminate temporary visitation.

On cross-appeal, Joey asserts that the district court erred in overruling his first motion to terminate visitation.

## ANALYSIS

The issue is whether a maternal grandparent's right to visitation is terminated by the subsequent adoption of the child by the stepmother. The district court concluded that under § 43-111, Neb. Rev. Stat. § 43-1801 (Reissue 1998), and *Rust v. Buckler*,

247 Neb. 852, 530 N.W.2d 630 (1995), the adoption of Shelby by Jessica terminated any rights that Leigh Ann had in Shelby and that, therefore, Katherine was no longer a "grandparent" and had no further right to visitation with Shelby.

In *Rust v. Buckler, supra*, the biological parents of Jason Dwayne Buckler died on or about September 19, 1993. Jerry and Marti Buckler, the maternal grandparents, who had been raising Jason since he was approximately 6 weeks old, took custody of Jason. Paul and Anita Rust, Jason's paternal grandparents, thereupon filed suit to establish visitation. Pursuant to the parties' agreement, the trial court entered a temporary order granting the Rusts specified visitation rights. The Bucklers thereafter adopted Jason and challenged the order of the trial court which granted the Rusts temporary visitation. The Bucklers' petition to set aside the temporary visitation order was denied, and the trial court then granted the Rusts permanent visitation.

On appeal, we did not decide whether an adoption serves to terminate the rights of a deceased biological parent such as to remove the grandparent from the ambit of the visitation statutes. We concluded that such determination was unnecessary because the language of Neb. Rev. Stat. § 43-110 (Reissue 1998) made it clear that because of the adoption, the Bucklers had become the boy's parents and the condition under which the visitation statutes would permit grandparent visitation no longer existed.

*Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999), was released after the filing of the district court's order herein. In *Pier*, we considered whether under Nebraska law, paternal grandparent visitation which had been granted following a divorce proceeding was automatically terminated by the father's voluntary relinquishment of parental rights and the subsequent adoption of the child by the stepfather.

In *Pier*, the parents divorced, and custody of the child was granted to the mother. Paternal grandparent visitation was granted, but the decree provided that such visitation could be unilaterally terminated by the mother if the father violated his criminal probation order or was charged with a criminal offense within 2 years after entry of the decree. In September 1994, the grandparents' visitation was terminated, evidently due to the

occurrence of one of those events. On October 20, the paternal grandparents initiated a new action and were granted temporary visitation. On May 26, 1995, the trial court awarded the grandparents visitation.

The mother had remarried in August 1993, and the biological father subsequently voluntarily relinquished his parental rights to the child and consented to the child's adoption by the stepfather. The adoption was entered April 11, 1996. On June 6, 1997, the mother moved to terminate the grandparents' visitation because the child had been adopted by the stepfather. The trial court denied the motion, concluding that the prior order of the court granting grandparent visitation was not automatically terminated by the adoption of the child by the stepfather and that it was in the best interests of the child to maintain grandparent visitation rights.

On appeal, we concluded that visitation granted under the grandparent visitation statutes was not intended to be interrupted by the adoption statutes. We stated:

> [T]he grandparent visitation statutes provide a two-step analysis by which the court, upon application, can determine on a case-by-case basis whether an order previously granting or denying grandparent visitation should be modified. Thus, following the adoption of the child, if the evidence shows that there has been a material change in circumstances justifying a change and the best interests of the child would be served, previously granted grandparent visitation can be modified, up to and including termination of grandparent visitation.

*Pier*, 257 Neb. at 128, 596 N.W.2d at 7. We affirmed the trial court's determination that grandparent visitation is not automatically terminated by the adoption of a minor child by a stepparent.

We noted that in contrast to § 43-110, § 43-111 makes no reference to the kindred of the natural parent as being affected by or relieved of the duties of their natural relationship to the child. We concluded that the effect of §§ 43-110 and 43-111 was to provide that the adoptive parent and his or her kindred enjoy a new relationship to the child but that only the natural parents of the adopted child were relieved of their duties to the child. Therefore, although § 43-110 relieves the natural parents of

their duties, § 43-111 does not affect the rights of the biological grandparents. We pointed out that if parental rights are terminated and the child is adopted prior to the time that grandparents seek visitation, then the grandparents have no standing to seek visitation.

The case at bar is controlled by our decision in *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999). To the extent that *Rust v. Buckler*, 247 Neb. 852, 530 N.W.2d 630 (1995), conflicts with *Pier*, it is overruled. Here, Katherine obtained an order of visitation prior to Shelby's adoption by Jessica, and therefore, Katherine's visitation rights were not terminated by the adoption.

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999). Grandparents' existing visitation rights are not automatically terminated by an adoption, but can be modified upon a showing of cause with the child's best interests at issue. "The court may modify an order granting or denying such visitation upon a showing that there has been a material change in circumstances which justifies such modification and that the modification would serve the best interests of the child." Neb. Rev. Stat. § 43-1802(3) (Reissue 1998).

On cross-appeal, Joey contends that the district court erred in overruling his first motion to terminate visitation. A party may appeal from a court's order only if the decision is a final, appealable order. *Hernandez v. Blankenship*, 257 Neb. 235, 596 N.W.2d 292 (1999). The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. See *id.*

The district court's order which overruled Joey's first motion to terminate visitation was not a final order such that Joey had to appeal within 30 days of the order. Therefore, we can consider the matter during this appeal.

Joey argues that the district court erred by not terminating visitation when Katherine took Shelby to see a lawyer without Joey's knowledge, filed a petition for habeas corpus, and objected to Joey's appointment as Shelby's conservator. Joey asserts that grandparent visitation is contingent upon several factors, one of which is that "such visitation will not adversely interfere with the parent-child relationship." See § 43-1802(2). Joey claims that Katherine's actions interfered with the parent-child relationship and were grounds for terminating grandparent visitation.

Factual determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of abuse of the trial judge's discretion. *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999).

Upon our de novo review of the record, we conclude that the trial judge did not abuse his discretion in overruling Joey's first motion for termination of grandparent visitation. Therefore, Joey's cross-appeal is without merit.

## CONCLUSION

For the reasons set forth herein, the judgment of the district court is reversed.

REVERSED.

STEPHAN, J., not participating.