Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/10/2020 09:07 AM CST

Mark S. Krejci, appellant, v.
Christina Krejci, appellee.
___ N.W.2d ___

Filed October 18, 2019.    No. S-18-908.

1. **Appeal and Error.** As a threshold matter, an appellate court must determine what assignments of error were properly raised and argued on appeal.

2. ____. The cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts, and when a brief of an appellee fails to present a proper cross-appeal, an appellate court declines to consider its merits.

3. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion.

4. **Judges: Words and Phrases.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

5. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

6. **Contempt: Words and Phrases.** Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

7. **Contempt: Presumptions: Proof.** Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence.

8. **Visitation: Statutes.** In Nebraska, grandparent visitation is controlled by statute.

9. **Due Process: Notice.** It is fundamental to due process that a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed in part, and in part reversed and vacated.

Edith T. Peebles, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellant.

Barry S. Grossman for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

After the father of two children passed away in 2014, the children's paternal grandfather obtained a decree for grandparent visitation in 2016. On one planned visit in 2018, the children refused to visit their grandfather and the mother was unable to compel them. The grandfather brought a civil contempt proceeding against the mother, and the mother filed a complaint for modification of grandparent visitation. With regard to the contempt proceeding, following a hearing, the Douglas County District Court found that the mother did not willfully and contumaciously violate the visitation decree. Although the court dismissed the complaint for modification and did not hold a separate hearing on modification, it ultimately modified the decree to, inter alia, reduce summer visitation with the grandfather. The grandfather appeals,

and the mother attempts to cross-appeal. We affirm the dismissal of the complaint for contempt but vacate the order of modification.

## STATEMENT OF FACTS

At the time the proceedings giving rise to this appeal were initiated, the minor children—a girl who was 15 years old and a boy who was 11 years old—lived in Nebraska with their mother, Christina Krejci. The biological father of the two children died in 2014. Following his death, Mark S. Krejci, the children's paternal grandfather, sought and obtained a decree for grandparent visitation under Neb. Rev. Stat. § 43-1802(1) and (2) (Reissue 2016). The decree, filed in December 2016, ordered visitation that included 17 consecutive days each summer and part of a weekend every 3 months, or as agreed in advance by the parties in writing. Mark and his wife live in Florida. Visits under the decree went smoothly until May 19, 2018.

Prior to the May 19, 2018, event from which this action arises, the parties made arrangements for Mark and his wife to visit. As planned, Mark and his wife flew to Omaha, Nebraska, in May 2018. However, the children informed Christina that they did not want to visit with the grandfather because May 19 was the date of their deceased father's birthday. The grandfather and his wife made several attempts to contact Christina to pick up the children, and Christina replied, generally, that the birthday was "a touchy day for all of [us]" and that she felt it was "hard . . . to force them to go somewhere they don't want to [go]" and she did not want to "add to the[ir] pain." The grandfather was ultimately unable to exercise his visitation on May 19.

The grandfather brought a civil contempt proceeding and complaint for interference of visitation against Christina, and Christina filed a complaint for modification of the visitation decree. The district court dismissed the motion for modification on its own motion without holding a separate hearing

because it found that it lacked jurisdiction "to allow grandparent visitation to take place or not take place upon the wishes of the minor children."

As part of the hearing on the civil contempt action to determine whether Christina had willfully and contumaciously violated the court's visitation order, the granddaughter appeared in chambers. She testified that Christina had not told her not to visit her grandfather. She testified that on May 19, 2018, "I didn't even want to be around my mom" and "I just think that on that day I should have been asked and not told" to have the visitation. She testified that she understood that her brother felt similarly. In addition to her objections to exercising grandparent visitation on her father's birthday, she generally expressed that she did not wish to be out of town for as long in the summer as in the past because a lengthy visitation affected her ability to work a summer job, complete driver's education classes, and participate in school activities. She testified in particular that she was not able to participate in cheerleading because of the grandparent visitation schedule. However, she acknowledged that visitation with her grandfather was an "important ingredient" to sustaining a relationship with him.

The record also contained email and text message exchanges between Christina and Mark and Christina and Mark's wife in which Christina raised concerns that the length of visitation was "a really long time for them to be gone." Mark submitted photographs showing the vacations the children had enjoyed with him and correspondence showing his efforts to arrange the visitation according to the decree.

In an order filed July 2, 2018, the district court found that Christina had not interfered with visitation and had not willfully and contumaciously violated the visitation decree. Accordingly, the court dismissed the complaint for contempt and for interference of visitation. In the same order, the district court determined that in light of the children's ages, the

children's desire to remember their deceased father privately on his birthday, and the summer activities that children have as they get older, the decree of grandparent visitation should be modified. The order modified the decree so that future visitation would not include the date of the deceased father's birthday or the anniversary of his death and that summer visitation would be reduced from 17 days to 8 days of continuous vacation visitation.

Mark appeals, and Christina attempts to cross-appeal.

## ASSIGNMENTS OF ERROR

On appeal, Mark claims, summarized and restated, that the district court erred when it (1) determined that Christina was not in contempt and (2) modified the decree of grandparent visitation.

[1,2] Christina also attempts to raise a cross-appeal related to her complaint to modify the decree. As a threshold matter, we must determine what assignments of error were properly raised and argued on appeal. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014) provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

Thus, the cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts. *In re Estate of Graham, supra*. However, Christina's cross-appeal section fails to set forth a separate title page and a table of contents. When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, as in this case, we decline to consider its merits. See *In re Estate of Graham, supra*.

## STANDARD OF REVIEW

[3,4] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id*.

## ANALYSIS

*Contempt.*

Mark claims that the district court erred when it determined that Christina was not in contempt of the decree of grandparent visitation as a result of the May 19, 2018, event. We find no merit to this assignment of error.

[5-7] We recently described civil contempt proceedings as follows:

> Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. See, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012); *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh, supra*. Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Hossaini v. Vaelizadeh, supra*.

Outside of statutory procedures imposing a different stan-
dard or an evidentiary presumption, all elements of con-
tempt must be proved by the complainant by clear and
convincing evidence. See, *id.*; *Smeal Fire Apparatus Co.
v. Kreikemeier, supra*.

*Martin v. Martin*, 294 Neb. at 117, 881 N.W.2d at 182.

We are aware that a parent may use a child's hesitation to
visit a noncustodial person as a subterfuge for contumaciously
interfering with the visitation. Mark relies on the event of
May 19, 2018, to establish his claim of contempt. However, in
*Martin*, we observed that a "singular event," which is not in
accordance with a court decree, may be defensible. *Id*. at 119,
881 N.W.2d at 183. Except for this event, the record shows
that grandparent visitation had gone smoothly. To illustrate
this history, we refer to the order dismissing the contempt
complaint in which the district court found "[e]vidence was
also adduced that as recently as March of 2018 [the grand-
daughter] traveled to Florida to visit with her grandfather over
spring break. Her brother was unable to attend because of a
recent ear surgery." This case presents a singular event, but
not a pattern.

The district court heard the evidence and stated that the
"primary reason" for the failure of grandparent visitation was
the fact that it was scheduled on the deceased father's birthday,
which the court described as an "upsetting day."

In its order, the district court stated: "[The granddaughter]
testified that she and her brother were very upset because the
visitation was to take place on the birthday of their deceased
father. She further testified that her mother, [Christina], did in
no way encourage them not to participate in the visitation."
The district court accepted this testimony and did not err in
doing so. The district court specifically found that with respect
to the granddaughter, "[i]t definitely was her decision not
to visit."

While we do not endorse the proposition that the responsi-
bility for adhering to a visitation plan devolves to the children,

a logical conclusion which results from the district court's findings in this contempt case is that Christina did not encourage or instruct the minor children to refuse to participate in the grandparent visitation. The district court viewed the event of May 19, 2018, in the overall context of a general history of compliance with the decree and the unusual circumstances of that particular day persuaded it that Christina's failure to strictly enforce the terms of the order on that date was not willful. The district court's determination that Christina was not in contempt was not an abuse of discretion.

*Modification.*

Mark claims that the district court erred when it modified the grandparent visitation decree in its order filed after the contempt hearing. Given the procedural history of this case, we find merit to this assignment of error. Accordingly, we reverse that portion of the order of July 2, 2018, which modified the decree of grandparent visitation, and we vacate the order of modification.

[8] At common law in Nebraska and elsewhere, "'"grandparents lacked any legal right to visitation and communication with their grandchildren if such visitation was forbidden by the parents . . . . Indeed, the parents' obligation to allow such visitation was a moral, not a legal obligation."'"" *Hamit v. Hamit*, 271 Neb. 659, 673, 715 N.W.2d 512, 525 (2006), quoting *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999). However, every state has adopted a statutory scheme permitting grandparent visitation under varying circumstances

[i]n part due to changing demographics and the presence of single-parent households in which grandparents and other persons "outside the nuclear family are called upon with increasing frequency to assist in the everyday tasks of child rearing," *Troxel v. Granville*, 530 U.S. 57, 64, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and in part due to a recognition of "the importance of the grandparent-grandchild relationship in the lives of children," *Moriarty*

*v. Bradt*, 177 N.J. 84, 97, 827 A.2d 203, 210 (2003), *cert. denied* 540 U.S. 1177, 124 S. Ct. 1408, 158 L. Ed. 2d 78 (2004) . . . .

*Hamit v. Hamit*, 271 Neb. at 673-74, 715 N.W.2d at 525. Thus, in Nebraska, grandparent visitation is controlled by statute. *Id*.

Modification of grandparent visitation may be ordered pursuant to § 43-1802(3), which provides: "The court may modify an order granting or denying such visitation upon a showing that there has been a material change in circumstances which justifies such modification and that the modification would serve the best interests of the child." Because we determine, as explained below, that the process by which the district court modified the grandparent visitation plan was flawed in this case, we do not address the propriety of combining contempt and modification of grandparent visitation in one hearing upon proper notice.

As explained in our statement of facts, Christina filed a complaint to modify the decree of grandparent visitation on June 21, 2018. An evidentiary hearing on Mark's complaint for contempt was conducted on June 28. The district court dismissed Christina's complaint to modify on its own motion on July 2, because it found that it lacked jurisdiction. The result of the evidentiary hearing on Mark's complaint for contempt was contained in the district court's order of July 2, in which it dismissed the complaint but proceeded to modify the decree of grandparent visitation.

Mark contends in general that he did not receive proper notice that modification would be considered at the hearing of June 28, 2018, and in particular that he was denied the opportunity to present certain evidence that would have pertained to modification. The record is consistent with Mark's contentions.

[9] It is fundamental to due process that a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights

which might be affected by it. See *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The procedural record in this case shows that the district court effectively dismissed Christina's complaint to modify prior to the contempt hearing and that it was reasonable for the parties to conclude that modification was off the table. In fact, the bill of exceptions shows that the court stated at the commencement of the hearing on June 28, 2018, that the purpose of the hearing was to consider Mark's complaint for contempt.

We agree with Mark's contention that under the circumstances of this case, the court's consideration and determination of modification as a consequence of the contempt hearing were improper due to a lack of notice and an opportunity to be heard. Accordingly, we reverse that portion of the order of July 2, 2018, which modified the decree of grandparent visitation, and we vacate the order of modification.

## CONCLUSION

For the reasons explained above, we affirm the district court's ruling dismissing Mark's complaint for contempt but we reverse the portion of the order which modified the decree of grandparent visitation and vacate the order of modification.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.