judgment. Knight's last three assignments of error are without merit.

## CONCLUSION

Having found no merit to any of Knight's assignments of error, we affirm the judgment of the district court.

Affirmed.

————————————

Meredith Muzzey and Robert Buhr, appellees,
v. Bobbie Ragone, formerly known as Bobbie
Buhr, and Paul Ragone, on behalf of Lucca
Hadin Ragone, formerly known as Lucca
Hadin Buhr, a minor child under the
age of 18 years, appellants.

___ N.W.2d ___

Filed April 9, 2013.    No. A-12-192.

1. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
2. **Visitation: Appeal and Error.** Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues.
5. **Parties: Standing: Jurisdiction.** A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.
6. **Standing: Jurisdiction.** Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.
7. **Standing.** Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated

to be entitled to its judicial determination. The focus is on the party, not the claim itself.

8. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

9. **Declaratory Judgments: Justiciable Issues: Standing: Moot Question.** Both standing and mootness are key functions in determining whether a justiciable controversy exists, or whether a litigant has a sufficient interest in a case to warrant declaratory relief.

10. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

Appeal from the District Court for Scotts Bluff County: Leo Dobrovolny, Judge. Reversed and remanded with directions.

Rhonda R. Flower, of Law Office of Rhonda R. Flower, for appellants.

Leonard G. Tabor for appellees.

Inbody, Chief Judge, and Sievers and Riedmann, Judges.

Inbody, Chief Judge.

## INTRODUCTION

Bobbie Ragone and Paul Ragone, the biological parents of Lucca Hadin Ragone, formerly known as Lucca Hadin Buhr, appeal the order of the Scotts Bluff County District Court awarding Bobbie's parents, Meredith Muzzey (Meredith) and Robert Buhr, grandparent visitation of Lucca.

## STATEMENT OF FACTS

In August 2009, Lucca was born to Bobbie and Paul, who were not married and were still in high school. On November 5, Meredith was designated and appointed, with Bobbie's consent, by the Scotts Bluff County Court as Lucca's guardian for the purpose of obtaining health insurance. Bobbie and Lucca resided with Meredith and Robert until December 18, 2010. Bobbie removed Lucca from the home and, on December 28, informed Meredith and Robert that they were no longer

allowed any contact with Lucca. The guardianship was terminated on December 29. On January 13, 2011, paternity was established finding that Paul was the father.

On March 23, 2011, Meredith and Robert filed in district court a motion to set visitations. The petition requested an order for specific visitation by Meredith and Robert with Lucca. Thereafter, Bobbie and Paul filed an answer admitting to some portions of the motion and denying the remaining allegations. On May 6, Meredith and Robert filed a motion to set the matter for trial, and a conference was held, after which the district court determined the case to be an appropriate case for mediation. The court ordered the parties to seek out and complete mediation counseling within 60 days.

On July 12, 2011, Bobbie and Paul filed a motion to dismiss, which indicated that in June 2011, they had been married in Montana, and that pursuant to Neb. Rev. Stat. § 43-1802 (Reissue 2008), the case no longer met the statutory requirements for grandparent visitation. After a hearing on the matter, the district court determined that even though Bobbie and Paul had married, Meredith and Robert had standing to seek grandparent visitation because Bobbie and Paul had not been married at the commencement of litigation, and that the issues were not moot, since the dispute which existed at the beginning of the litigation had not been eliminated.

Trial was held on the matter, during which the parties gave significant testimony about the tumultuous relationship between Meredith, Robert, and Bobbie. Very little testimony was actually elicited regarding their relationships with Lucca. Meredith testified that Bobbie was the youngest of her and Robert's three children. Meredith testified that Lucca, Bobbie's only child, was born in August 2009. After Lucca's birth, Bobbie and Lucca resided at Meredith and Robert's home. Meredith and Robert supported Bobbie and Lucca by providing food, diapers, clothing, and any other supplies needed. At the time of Lucca's birth, Bobbie and Paul were not married and both were still in high school.

Meredith testified that Bobbie was in high school until Lucca was born, at which time Bobbie became a full-time student at a community college and also worked part time at a restaurant.

During the day, both Meredith and Robert worked full time and they took Lucca to daycare, until Meredith lost her job and stayed home with Lucca. Meredith had a guardianship of Lucca after he was born so that she could provide health insurance for him. Meredith testified that the guardianship remained intact until December 2010.

Meredith testified that in December 2010, Bobbie and Lucca moved out of Meredith and Robert's home. Meredith explained that from December 2010 through July 2011, she had contact with Lucca only in January when Bobbie brought Lucca over for Meredith to babysit while Bobbie was at work, but that an argument ensued between Meredith, Robert, and Bobbie and that Bobbie forbade them from seeing Lucca ever again. Meredith explained that she, Robert, and Bobbie had a difficult relationship at times and that arguments took place between them. Meredith testified that she and Robert provided Bobbie with a car and cellular telephone, which frequently became the source of arguments. Meredith testified that on two occasions, police were contacted during those arguments. Meredith testified that Robert and Paul frequently argued, including some occasions when Lucca was present.

Meredith testified that she believed she and Robert had bonded with Lucca. Meredith testified that she missed having Bobbie and Lucca in her life and wanted to have visitations with Lucca. Meredith requested that if Bobbie and Lucca were in town, she would like to see Lucca and be allowed to give him gifts, that she would like to see him in the summertime, and that she would like to be able to contact Lucca on the telephone or via "Skype." Meredith testified that she and Robert would be willing to pay for all of the transportation and all expenses involved in any visitation.

Robert testified about many of the same issues and explained that he agreed with much of Meredith's testimony. Robert explained that many of the disagreements with Bobbie involved Bobbie's disobeying rules or "sneaking around" with Paul. Robert also added that his two other daughters had good relationships with Lucca.

Bobbie testified at the trial that she was 19 years old and was Lucca's mother. Bobbie explained that Lucca was 2 years

old and had been residing in Montana for the previous year. Bobbie testified that she was working as a "CNA" and had married Paul on June 22, 2011. Bobbie testified that Paul was living with his parents in the Scottsbluff, Nebraska, area. Bobbie testified that Paul had been working with his father and that she and Paul would be heading back to Montana a few days after the trial to live together.

Bobbie explained that she consented to a guardianship for Lucca with Meredith for medical reasons only and that she petitioned the court for termination of the guardianship in November 2010. Bobbie indicated that she terminated the guardianship so that Meredith and Robert would not be able to take advantage of their position. Bobbie testified that while she lived with them, Meredith and Robert cared for Lucca, took him to doctor appointments, and paid medical bills for him. Bobbie explained that neither of her parents had ever mistreated Lucca, but had always mistreated her in front of Lucca. Bobbie explained that when she and Lucca were living with Meredith and Robert, they were all constantly fighting, and that the environment was not good for Lucca. Bobbie testified that she moved out in December 2010, because she knew that a court hearing was coming up for removal of the guardianship and because she was tired of how she was being treated. Bobbie admitted that Meredith and Robert did not resist the guardianship termination.

Bobbie explained that she had a "[n]on-existent" relationship with Meredith and Robert and had not responded to any communication from them, because she did not want to have a relationship with either of them. Bobbie testified that there was not a significant beneficial relationship between Lucca and her parents and that it was not in Lucca's best interests to continue any relationship with them. Bobbie testified that Lucca was unable to have computer or telephone contact, because "he [would] rather be doing something else" and she did not want Lucca to have any type of visitation with her parents.

Paul's testimony and reflections of the relationship between Meredith, Robert, and Bobbie mirrored that of Bobbie's testimony. Paul testified that he had not been to Montana to

visit Bobbie or Lucca in 6 months, but that he was able to talk to Lucca on the telephone. Paul also explained that in those 6 months, Bobbie had not been back to Nebraska with Lucca either. Paul testified that he was helping his father build a horsebarn, but could not get a job in Montana. Paul explained that he applied for a job with the "Forest Service" and was hoping to get the job, but would also be applying for other jobs.

The district court found that a significant beneficial relationship exists, or had existed, between Meredith, Robert, and Lucca and that it is in Lucca's best interests that the relationship continue. The court found that Bobbie was 19 years old and residing in Montana, while Paul was 20 years old and residing in Scotts Bluff County with his parents. Although the two were married in June 2011, the district court found that Paul had continued to reside with his parents since July 2011 and that he and Bobbie had not lived with each other for any significant period since being married. The court ordered that reasonable visitation shall include 6 hours a month where Lucca resides, supervised by Bobbie or Paul. The court ordered that Meredith and Robert be allowed 15-minute telephone visits every 14 days and 1 hour of visitation for every 48 hours that Lucca is in Scotts Bluff County. Meredith and Robert were ordered to pay all costs of visitation, all of the parties were ordered to attend a minimum of 10 sessions of counseling, and visitation was not to commence until at least three sessions of counseling had been completed. It is from this order that Bobbie and Paul have timely appealed.

## ASSIGNMENTS OF ERROR

Bobbie and Paul assign, rephrased and consolidated, that the district court erred by finding that Bobbie and Paul's marriage did not result in a loss of standing for Meredith and Robert and by granting Meredith and Robert's motion for grandparent visitation.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of

law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002).

[2,3] Determinations concerning grandparent visitation are initially entrusted to the discretion of the trial judge, whose determinations, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Nelson v. Nelson*, 267 Neb. 362, 674 N.W.2d 473 (2004); *Vrtatko v. Gibson*, 19 Neb. App. 83, 800 N.W.2d 676 (2011). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Nelson v. Nelson, supra.*

## ANALYSIS

Bobbie and Paul argue that the district court erred by determining that Meredith and Robert had standing to maintain the suit for grandparent visitation, because Bobbie and Paul were married. Bobbie and Paul contend that pursuant to § 43-1802, Meredith and Robert no longer had any right to request visitation.

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues. See *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012).

[5-8] A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 801 N.W.2d 253 (2011). Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim

itself. *Id*. And standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Id*.

Section 43-1802(1) provides that a grandparent may seek visitation with a grandchild if:

(a) The child's parent or parents are deceased;

(b) The marriage of the child's parents has been dissolved or petition for the dissolution of such marriage has been filed, is still pending, but no decree has been entered; or

(c) The parents of the minor child have never been married but paternity has been legally established.

At the inception of this case, when the motion for grandparent visitation was filed in March 2011, Bobbie and Paul had never been married, but Lucca's paternity had been legally established. Bobbie and Paul were not married until June 22. On July 12, Bobbie and Paul filed a motion to dismiss the motion, indicating that they were married and that, pursuant to § 43-1802, the case no longer met the statutory requirements for grandparent visitation. A hearing was held on the matter, after which the district court determined that even though Bobbie and Paul had married, Meredith and Robert had standing to seek grandparent visitation because Bobbie and Paul had not been married at the commencement of litigation, and that the issues were not moot, since the dispute which existed at the beginning of the litigation had not been eliminated.

In Nebraska, the specific question of standing with regard to the marriage of a child's parents subsequent to the filing of a motion for grandparent visitation has not been addressed. Based on our expanded search, it has likewise not been frequently addressed by other jurisdictions.

In the case of *In re Visitation of J.P.H.*, 709 N.E.2d 44 (Ind. App. 1999), the Indiana Court of Appeals determined that paternal grandparents of a child born out of wedlock but legitimated by establishment of the father's paternity and the parents' subsequent marriage lacked standing under the Indiana grandparent visitation statute, which statute is very similar to

Nebraska's § 43-1802, to petition for visitation against the parents' wishes. In that case, the child was born out of wedlock, paternity was established, and the parents married after the child's birth. The trial court dismissed the petition for grandparent visitation, and the Indiana Court of Appeals affirmed, reasoning that

> for all intents and purposes under the law, a child born out of wedlock, whose father establishes paternity and marries the child's mother, will be treated as if he were born during the marriage. We believe that this concept of legitimation by subsequent marriage and acknowledgment has such a long and consistent history that our legislature simply did not contemplate the situation posed in the present case when enacting the present version of the [grandparent visitation statute].

*In re Visitation of J.P.H.*, 709 N.E.2d at 47. The Indiana Court of Appeals concluded that grandparent visitation under the circumstances wherein the parents were married constituted an "unwarranted encroachment into the right of the custodial parents to raise their child as they see fit." *Id.*

Although not in response to a case specifically involving grandparent visitation, the Nebraska Supreme Court has addressed the issue of continuing standing in the case of *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006), wherein the plaintiff appealed from an order dismissing a class action filed on behalf of the plaintiff and other taxpayers to recover an alleged illegal expenditure of state funds. The State alleged, among other issues, that the plaintiff lost standing during the proceedings, even though he initially had standing. *Id.* In rejecting the notion that standing had been lost, the court said:

> It is true that the "personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) (quoted in *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989)). Further, the U.S. Supreme Court has held that a plaintiff bears the burden of establishing standing

and that a defendant may "point out a *pre-existing* standing defect late in the day." (Emphasis supplied.) *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Yet, in the same case, the Court stated that jurisdiction, including standing, "is to be assessed under the facts existing when the complaint is filed." *Id*. The timing requirement is important because the plaintiff's personal interest "is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter." *Becker v. Federal Election Com'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000).

The State cites only one decision in which a court held that a plaintiff can lose its standing during a lawsuit. See *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477 (10th Cir. 1995). In a more recent case, however, the 10th Circuit held that "[s]tanding is determined as of the time the action is brought." *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). In a footnote, the court specifically addressed its earlier holding: "In *Powder River Basin Res. Council v. Babbitt*, we stated that a plaintiff had 'lost standing' in the middle of a lawsuit. . . . Although we used standing terminology, it seems that this was really a mootness question. Other courts have criticized *Powder River* for using standing terminology for what was really a mootness issue. See *Becker v. FEC*, 230 F.3d 381, 386 n. 3 (1st Cir.2000)."

*Myers v. Nebraska Invest. Council*, 272 Neb. at 682-83, 724 N.W.2d at 792-93. The court concluded that standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *Myers v. Nebraska Invest. Council, supra*.

In the case at hand, § 43-1802(1) provides the requirements that a grandparent must have in order to have standing to seek visitation with the grandchild pursuant to this statute, which requirements are as follows:

(a) The child's parent or parents are deceased;

(b) The marriage of the child's parents has been dissolved or petition for the dissolution of such marriage

has been filed, is still pending, but no decree has been entered; or

(c) The parents of the minor child have never been married but paternity has been legally established.

At the commencement of the present case, Meredith and Robert had standing to seek grandparent visitation with Lucca pursuant to § 43-1802(1)(c), because although paternity had been legally established, Bobbie and Paul were not married. Therefore, because they had standing at the inception of the proceedings, even though Bobbie and Paul subsequently married, Meredith and Robert did not lose standing. However, the inquiry does not end there because, based upon the determinations of the Nebraska Supreme Court in *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006), the issue is more accurately assessed as a mootness issue.

[9,10] Both standing and mootness are key functions in determining whether a justiciable controversy exists, or whether a litigant has a sufficient interest in a case to warrant declaratory relief. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010); *Schneider v. Lambert*, 19 Neb. App. 271, 809 N.W.2d 515 (2011). A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009); *Schneider v. Lambert, supra*.

Under the circumstances of this case, we conclude that the case has become moot. Section 43-1802(1)(c) allows for grandparent visitation when the parents of the child have never been married and paternity has been legally established. At the inception of the case, these circumstances were true; however, during the pendency of the case, as indicated in the statement of facts above, Bobbie and Paul were legally married. Thus, in accordance with the grandparent visitation statutes, Meredith and Robert no longer have the right to request grandparent visitation and the issue is moot.

## CONCLUSION

In sum, we conclude that at the inception of the case, Meredith and Robert had the legal right to seek grandparent visitation and were entitled to invoke the jurisdiction of the court. However, as a result of the subsequent marriage of Bobbie and Paul, in accordance with the grandparent visitation statutes, the issue of grandparent visitation is moot. Therefore, we reverse the judgment and remand the matter to the district court with directions to deny Meredith and Robert's motion for grandparent visitation as moot.

Reversed and remanded with directions.

---

In re Interest of Jacob H. et al.,
children under 18 years of age.
State of Nebraska, appellee,
v. Brett H., appellant.

___ N.W.2d ___

Filed April 9, 2013.    No. A-12-491.

1. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.
2. **Judges: Recusal: Appeal and Error.** A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court.
3. **Juvenile Courts: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.
4. **Pleadings.** When a party seeks leave to amend a pleading in a civil proceeding, the general rule is that leave shall be freely given when justice so requires.
5. ____. A court's denial of a request to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.
6. **Judges: Recusal: Proof.** In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.
7. **Judges: Recusal: Presumptions.** A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.