Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/18/2018 08:08 AM CST

Dean D. and Michelle D., appellants,
v. Rachel S., appellee.
___ N.W.2d ___

Filed December 18, 2018.    No. A-17-1260.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court reviews a district court's grant of a motion to dismiss de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.
2. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
3. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts.
4. **Parties: Standing: Jurisdiction.** A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.
5. **Standing.** Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself.
6. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.
7. **Standing: Words and Phrases.** Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court.
8. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.

9. **Moot Question: Words and Phrases.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

Appeal from the District Court for Gage County: Rɪᴄᴋʏ A. Sᴄʜʀᴇɪɴᴇʀ, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Benjamin H. Murray, of Germer, Murray & Johnson, for appellants.

Dustin A. Garrison, of Garrison Law Firm, and Lyle J. Koenig, of Koenig Law Firm, for appellee.

Mᴏᴏʀᴇ, Chief Judge, and Bɪsʜᴏᴘ and Aʀᴛᴇʀʙᴜʀɴ, Judges.

Bɪsʜᴏᴘ, Judge.

## INTRODUCTION

Dean D. and Michelle D. filed an action in the district court for Gage County seeking grandparent visitation with their grandson, Tayvin D. It is undisputed by the parties that subsequent to Dean and Michelle's filing, their son relinquished his parental rights to Tayvin and Tayvin was later adopted by his stepfather. After the adoption, Tayvin's mother moved to dismiss Dean and Michelle's action for grandparent visitation based on standing and mootness principles. Although the district court concluded that Dean and Michelle still had standing, it granted the motion to dismiss because it found that the case had become moot. Dean and Michelle appeal. We affirm in part, and in part reverse and remand for further proceedings.

## BACKGROUND

Rachel S. and Taylor D. are the biological parents of Tayvin, born in 2009. Rachel and Taylor divorced in 2013; Rachel subsequently remarried.

On October 17, 2016, Dean and Michelle, who are Taylor's parents, filed an action in the district court seeking grandparent visitation with Tayvin pursuant to Neb. Rev. Stat. § 43-1802 (Reissue 2016). Dean and Michelle acknowledged that Rachel had legal and physical custody of Tayvin. In support of their request for grandparent visitation, Dean and Michelle alleged (1) they had retained significant contact with Tayvin since his birth, including personal contact at least once every month, overnight visitation during some of the months, and extended visitation time of 1 to 2 weeks every summer; (2) they had provided financial support to Tayvin; and (3) they had an existing "close . . . significant beneficial relationship" with Tayvin, which was in his best interests to maintain. Dean and Michelle requested visitation consisting of one weekend per month, weekly contact for a specified time period, alternating holiday visitation, and 2 weeks of summer visitation. An "Amended Application for Grandparent Visitation" was filed in January 2017; it added information about Rachel and Taylor's divorce in February 2013 and sought less visitation time than initially requested.

Rachel answered Dean and Michelle's amended application in February 2017. In August, she filed a motion to dismiss the action, stating that Taylor relinquished his parental rights to Tayvin and that her current husband had adopted Tayvin pursuant to a decree of adoption entered by the county court for Gage County. As a result, Rachel claimed that Dean and Michelle's action was "moot" and that Dean and Michelle "no longer possess standing to request grandparent visitation with Tayvin." A copy of the decree of adoption was attached to and incorporated into the motion to dismiss. In the decree of adoption, the county court made findings, among other things, that (1) Taylor abandoned Tayvin for at least 6 months before the adoption petition was filed, (2) all consents or substitute consents required by law were properly executed and filed, (3) Tayvin resided with Rachel and her current husband for at least

6 months prior to the adoption's filing, and (4) it was in the best interests of Tayvin that the decree of adoption be entered as requested.

Following a hearing on Rachel's motion to dismiss Dean and Michelle's action, the district court entered an order on November 13, 2017, finding that Dean and Michelle had standing to seek grandparent visitation at the time their application was filed. However, the court pointed out that Dean and Michelle "admit that on or about August 10, 2017, [their son] relinquished parental rights to Tayvin . . . , who was subsequently adopted by [Rachel's husband]." Therefore, the court concluded that Dean and Michelle no longer had a legally cognizable interest in the outcome of the litigation, and as such, the matter was moot and their application had to be dismissed. Dean and Michelle timely appealed.

## ASSIGNMENT OF ERROR

Dean and Michelle claim the district court erred in finding that their application for grandparent visitation was moot and granting Rachel's motion to dismiss.

## STANDARD OF REVIEW

[1] An appellate court reviews a district court's grant of a motion to dismiss de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *McCully, Inc. v. Baccaro Ranch*, 279 Neb. 443, 778 N.W.2d 115 (2010).

[2,3] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009). When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *Id.*

## ANALYSIS

Dean and Michelle argue the district court erred in finding their application for grandparent visitation was moot. They claim that the time at which they first sought grandparent visitation is controlling and that the district court found Dean and Michelle had standing to seek grandparent visitation under § 43-1802(1)(b) given the facts that existed at the time the application was filed. In response, Rachel argues that Dean and Michelle "confuse standing with the larger issue of justiciability" and that "mootness governs the action after the filing but before an order is entered." Brief for appellee at 2-3. Because standing is a jurisdictional issue, we address that first, followed by a discussion on mootness.

### Standing

[4-6] A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 801 N.W.2d 253 (2011). Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself. *Id.* And standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Id.*

In Nebraska, grandparent visitation is a creature of statute. *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999). See, generally, Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 2016) (Nebraska's grandparent visitation statutes). In *Pier*, the Nebraska Supreme Court said that "we must look to those statutes to determine the visitation rights of natural grandparents following an adoption of the child," when analyzing a grandparent visitation issue. *Pier*, 257 Neb. at 127, 596 N.W.2d at 6.

Therefore, we first review the pertinent grandparent visitation statutes. The definition of a grandparent under § 43-1801 states:

> As used in sections 43-1801 to 43-1803, unless the context otherwise requires, grandparent shall mean the biological or adoptive parent of a minor child's biological or adoptive parent. Such term shall not include a biological or adoptive parent of any minor child's biological or adoptive parent whose parental rights have been terminated.

Section 43-1802(1) then lists the specific conditions which must exist in order for a grandparent to seek visitation:

> A grandparent may seek visitation with his or her minor grandchild if:
>
> (a) The child's parent or parents are deceased;
>
> (b) The marriage of the child's parents has been dissolved or petition for the dissolution of such marriage has been filed, is still pending, but no decree has been entered; or
>
> (c) The parents of the minor child have never been married but paternity has been legally established.

In *Pier*, the Nebraska Supreme Court found that "[the grandparents'] standing was predicated upon their satisfying the statutory definition of 'grandparent'" at the time they filed their action for grandparent visitation. 257 Neb. at 127, 596 N.W.2d at 6.

Accordingly, the district court was correct in determining that Dean and Michelle had standing to seek grandparent visitation at the commencement of the case. At that time, under § 43-1801, Dean and Michelle met the definition of grandparents, because they are the biological parents of Taylor, who is Tayvin's biological father, and because Taylor's parental rights were still intact. Also, they were allowed to seek visitation based on § 43-1802(1)(b), because the marriage of Rachel and Taylor had been dissolved by a decree of dissolution.

[7] Rachel's motion to dismiss alleged in part that Dean and Michelle "*no longer possess standing* to request grandparent visitation" with Tayvin. (Emphasis supplied.) However, in *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006), the Nebraska Supreme Court rejected the notion that a party can "lose" standing. In that case, the Nebraska Supreme Court defined standing as "the legal or equitable right, title, or interest in the subject matter of the controversy, which entitles a party to invoke the jurisdiction of the court." *Myers*, 272 Neb. at 680, 724 N.W.2d at 791. The court said:

> It is true that the "personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) (quoted in *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989)). Further, the U.S. Supreme Court has held that a plaintiff bears the burden of establishing standing and that a defendant may "point out a *pre-existing* standing defect late in the day." (Emphasis supplied.) *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Yet, in the same case, the Court stated that jurisdiction, including standing, "is to be assessed under the facts existing when the complaint is filed." *Id.* The timing requirement is important because the plaintiff's personal interest "is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter." *Becker v. Federal Election Com'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000).

*Myers*, 272 Neb. at 682-83, 724 N.W.2d at 792. See, also, *Muzzey v. Ragone*, 20 Neb. App. 669, 831 N.W.2d 38 (2013) (differentiating standing and mootness in grandparent visitation case).

We conclude, as did the district court, that standing was properly established when Dean and Michelle filed their application seeking grandparent visitation. As noted above, standing is to be assessed under the facts existing when an action is commenced. We affirm the portion of the district court's order concluding that Dean and Michelle had standing to seek grandparent visitation. However, the district court then concluded that Dean and Michelle's action became moot when Taylor relinquished his parental rights; we address that issue next.

## MOOTNESS

[8,9] Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010). A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 771 N.W.2d 103 (2009).

Dean and Michelle's application for grandparent visitation was pending in the district court when Taylor relinquished his parental rights to Tayvin and Tayvin was legally adopted by his stepfather. The district court found that as a result of these facts, Dean and Michelle's application was moot.

The district court stated:

As used in sections 43-1801 to 43-1803, unless the context otherwise requires, grandparent shall mean the biological or adoptive parent of a minor child's biological or adoptive parent. Such term shall not include a biological or adoptive parent of any minor child's biological or adoptive parent whose parental rights have been terminated. *Neb. Rev. Stat.* § 43-1801.

. . . .

Pursuant to the grandparent visitation statutes, a grandparent's ability to seek visitation in the first instance is premised upon the relationship between the grandchild and his or her parent; once the parental relationship is terminated, the statutory basis on which a grandparent can seek visitation is likewise extinguished. *Pier v. Bolles*, 257 Neb. 120[, 596 N.W.2d 1] (1999).

When Taylor . . . relinquished his parental rights to [the stepfather] terminating the parental relationship, the statutory basis upon which Dean and Michelle . . . could seek visitation was also extinguished. Because the statutory basis upon which [Dean and Michelle] could seek visitation has been extinguished they lack a legally cognizable interest in the outcome of litigation and they seek to determine a question which does not rest upon existing facts or rights. Therefore the matter is moot and their application must be dismissed.

Although the district court cites to *Pier v. Bolles*, 257 Neb. 120, 596 N.W.2d 1 (1999), to determine Dean and Michelle's action was moot, we view *Pier* as being instructive on issues of grandparent standing in light of a parental relinquishment and stepparent adoption. It also addresses a request to modify a grandparent visitation order. In *Pier*, the biological parents had one child during their marriage, but later divorced. Pursuant to their 1992 divorce decree, the mother was awarded custody of the minor child and the paternal grandparents were granted grandparent visitation. The mother later terminated the grandparents' visitation, evidently due to conditions under the decree allowing her to do so. The grandparents then initiated a new action in 1994 to establish grandparent visitation with their grandson, which the district court awarded in May 1995. In October, the father voluntarily relinquished his parental rights to the minor child and consented to the child's adoption by the mother's current husband; the child was subsequently adopted by his stepfather. In June 1997, the mother moved to

modify the May 1995 grandparent visitation order, seeking to terminate the grandparents' visitation due to their son's relinquishment of his parental rights and the subsequent stepparent adoption. The district court determined the grandparent visitation did not automatically terminate because of the adoption of the child by the stepfather, and the district court further found it was in the child's best interests to maintain the grandparent visitation rights. The district court denied the mother's petition for modification, and she appealed.

The Nebraska Supreme Court held the trial court correctly concluded that the grandparent visitation previously granted was not automatically terminated by the biological father's voluntary relinquishment of parental rights and the child's subsequent adoption by his stepfather; it affirmed as a matter of law that portion of the trial court's order. *Pier* stated that the grandparents' standing was predicated upon their satisfying the statutory definition of a grandparent at the time they filed their 1994 action and that subsequent to the 1995 visitation order, the father voluntarily relinquished his parental rights. The court said:

There is no question that under the grandparent visitation statutes, if [the biological father] had terminated his parental rights and [the child] had been adopted by his stepfather prior to [the grandparents'] seeking grandparent visitation, [the grandparents] would have had no standing under the statutes to seek such visitation. Pursuant to the grandparent visitation statutes, a grandparent's ability to seek visitation in the first instance is premised upon the relationship between the grandchild and his or her parent. Once the parental relationship is terminated, the statutory basis on which a grandparent can seek visitation is likewise extinguished. . . .

 . . . Unlike the provisions relative to grandparents seeking visitation in the first instance, nothing contained within the modification provisions of the grandparent visitation statutes makes the modification of previously

ordered grandparent visitation dependent upon the par-
ent's continued parental relationship with the child. .
. . [W]e determine that . . . the Legislature intended that
grandparent visitation granted under these statutes not be
interrupted by the adoption statutes. . . . Thus, following
the adoption of the child, if the evidence shows that there
has been a material change in circumstances justifying
a change and the best interests of the child would be
served, previously granted grandparent visitation can be
modified, up to and including termination of grandpar-
ent visitation.

*Pier v. Bolles*, 257 Neb. 120, 127-28, 596 N.W.2d 1, 6-7
(1999). Although the Supreme Court agreed with the trial court
that the grandparent visitation did not automatically terminate
upon the adoption of the child by the stepparent, it also con-
cluded that because of the "scant record of evidence regarding
the child's best interests," the trial court abused its discretion
in finding that continued grandparent visitation was in the best
interests of the child. *Id*. at 130, 596 N.W.2d at 8.

*Pier* informs us that if an order for grandparent visitation
has already been entered, a subsequent parental relinquishment
and stepparent adoption does not automatically terminate the
grandparent visitation. However, a modification action can
be brought, and if the best interests of the child are not suf-
ficiently proved, then grandparent visitation can be terminated.
*Pier* also instructs that if a biological parent relinquishes his
or her parental rights *before* a grandparent seeks visitation, the
grandparent would have no standing to bring an action under
the grandparent visitation statutes.

As we already discussed earlier, because Taylor had not yet
relinquished his parental rights before Dean and Michelle filed
their action, they had standing to seek grandparent visitation.
And although Dean and Michelle did not yet have an order
granting them visitation rights before Taylor relinquished his
parental rights (like the grandparents in *Pier*), that does not
change the fact that they had standing when they filed their

action. Nothing in *Pier* suggests that Dean and Michelle would lose standing to pursue their action because of Taylor's subsequent voluntary parental relinquishment; rather, it clearly holds that grandparent standing is determined at the time a grandparent files an action seeking visitation.

However, the district court also referenced *Muzzey v. Ragone*, 20 Neb. App. 669, 831 N.W.2d 38 (2013), when dismissing the action on the basis of mootness. While it is true this court concluded the grandparents' action in that case was moot, its facts are distinguishable from the present case. In *Muzzey*, the biological parents were not married at the time their minor child was born in 2009. In January 2011, paternity was established, and a couple months later, the maternal grandparents filed a motion for grandparent visitation. In July, the biological parents filed a motion to dismiss, indicating that they had been married in June and that therefore, the case no longer met the statutory requirements for grandparent visitation under § 43-1802. See § 43-1802(1) ("grandparent may seek visitation with his or her minor grandchild if: . . . (c) The parents of the minor child have never been married but paternity has been legally established").

The district court in *Muzzey* found that despite the parents' marriage, the grandparents had standing to seek grandparent visitation, because the marriage happened after the commencement of litigation. The district court also found that the issues were not moot, because the dispute which existed at the beginning of litigation had not been eliminated. After a trial, the district court ordered grandparent visitation with the minor child. The parents appealed, arguing that their marriage resulted in a loss of standing for the grandparents and that they no longer had a right to request visitation.

On appeal, this court then concluded the grandparents had standing to seek grandparent visitation with the minor child under the grandparent visitation statutes because although paternity had been established, the parents were not married at the inception of the proceedings. This court continued, "even

though [the parents] subsequently married, [the grandparents] did not lose standing." *Muzzey*, 20 Neb. App. at 679, 831 N.W.2d at 46. We concluded, however, that the case became moot when circumstances changed during the pendency of the case, stating as follows:

> Section 43-1802(1)(c) allows for grandparent visitation when the parents of the child have never been married and paternity has been legally established. At the inception of the case, these circumstances were true; however, during the pendency of the case [the parents] were legally married. Thus, in accordance with the grandparent visitation statutes, [the grandparents] no longer have the right to request grandparent visitation and the issue is moot.

*Muzzey*, 20 Neb. App. at 679, 831 N.W.2d at 46.

In *Muzzey*, therefore, the grandparents' action was predicated on § 43-1802(1)(c), which allows for grandparent visitation when the biological parents have never been married, but paternity has been established. The grandparents had a legally cognizable interest under § 43-1802(1)(c) when they filed; however, that interest ceased to exist upon the marriage of the biological parents. In this case, Dean and Michelle sought grandparent visitation under § 43-1802(1)(b), which allows a grandparent to seek visitation if "[t]he marriage of the child's parents has been dissolved or petition for the dissolution of such marriage has been filed, is still pending, but no decree has been entered[.]" Rachel and Taylor divorced in 2013, and Dean and Michelle subsequently filed their application for grandparent visitation. Dean and Michelle's legally cognizable interest was predicated upon the divorce of Tayvin's parents, and nothing in the record shows any change in circumstances in that regard. Therefore, unlike *Muzzey*, where the marriage of the grandchild's biological parents extinguished the legal basis upon which the grandparents sought visitation, in this case, the legal basis for visitation still exists because Rachel and Taylor remain divorced.

Accordingly, Dean and Michelle's application for grandparent visitation did not become moot, because they continue to have a legally cognizable interest in the outcome of litigation, they seek to determine a question upon existing facts and rights, and the issues presented are still alive. Dean and Michelle's application for grandparent visitation was therefore erroneously dismissed. We reverse the district court's decision to dismiss Dean and Michelle's action, and we remand the cause so that the district court can determine the merits of their application for grandparent visitation under § 43-1802(2). When determining whether to award reasonable rights of visitation to a grandparent, § 43-1802(2) requires clear and convincing evidence that there is, or there has been, a significant beneficial relationship between the grandparent and the child, that it is in the best interests of the child that the relationship continue, and that such visitation will not adversely interfere with the parent-child relationship.

## CONCLUSION

We affirm the district court's order insofar as it concluded that Dean and Michelle had standing to bring their action seeking grandparent visitation. However, we reverse the district court's order as to its conclusion that Dean and Michelle's action was moot and therefore had to be dismissed. Accordingly, we remand the cause for further proceedings for a determination of the merits of Dean and Michelle's application for grandparent visitation.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.